UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

S&G FLOORING, INC.,

Petitioners,

- v -

NEW YORK CITY DISTRICT COUNSEL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY FUND,
NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND; UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA FUND and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL
O'BRIEN, as TRUSTEES, AND MICHAEL J. FORDE
AS EXECUTIVE SECRETARY-TREASURER, DISTRICT
COUNCIL FOR NEW YORK CITY AND VICINITY,
UNITED BROTHREHOOD OF CARPENTERS AND
JOINERS OF AMERICA,

Respondents.

------------------------------X

**USDS SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** __
**DATE FILED:** __

**MEMORANDUM AND**
**ORDER**

09 Civ. 2836
(NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Petitioner S&G Flooring, Inc. ("SGF" or "Petitioner")
seeks to vacate an arbitration default award entered in
favor of respondents, the New York City District Council of
Carpenters Pension Fund, et al. ("the Funds" or

1

"Respondents") through a petition made on March 16, 2009. Presently before the Court is a motion to dismiss that petition. Respondents have also requested that the court, sua sponte, treat the motion to dismiss as a motion to confirm the award. For the reasons set forth below, we grant respondents' motion and dismiss the petition to vacate the award. In doing so, we also confirm the award.

## BACKGROUND[1]

The arbitration award at issue here arose out of circumstances beginning in January 2005, when SGF was engaged in a flooring job at 1400 Broadway in New York City. Petitioner alleges that the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("the Union") ordered its union workers to stop work on the project unless and until SGF stopped using non-union workers, signed a collective bargaining agreement ("CBA"), and became bonded. When the Union presented a CBA to SGF later that day, SGF's President signed it without reading it or

[1] The facts in this section are as Petitioner alleges in the Petition unless otherwise specified. In considering this motion to dismiss, we accept as true the facts alleged in the complaint, Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995), and draw all reasonable inferences in favor of plaintiff, Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).

2

having an attorney review it. SGF alleges that the Union told SGF's President that the CBA covered only the 1400 Broadway project, but by its terms the agreement actually covered all SFG projects in New York, Orange, Putnam, Queens, Richmond, Rockland, Suffolk, Westchester, and Dutchess counties. The CBA required SGF to make contributions to various employee benefit funds on behalf of the union employees, which SGF made for its employees working at the 1400 Broadway project (but no others).

On August 13, 2007, respondents served SGF with a Notice of Intention to Arbitrate with regard to unpaid fringe benefit contributions allegedly owed under the CBA for the period of January 19, 2005 through June 30, 2005. Petitioner's Memorandum of Law in Opposition to Respondents' Motion to Dismiss ("Pet. Mem.") at 3-4. On October 2, 2007, the arbitrator held a hearing, and two days later an award was issued in favor of the Funds.

A motion to confirm that award was then made by the Funds before this court in a related case to the instant suit. On June 23, 2009, the motion was granted based on (1) SGF's failure to apply for a stay of arbitration within the period required by CPLR 7503(c), and (2) the expiration of the 90 day statute of limitations for contesting an award under CPLR 7511(a). New York City Dist. Counsel of

3

Carpenters Pension Fund v. S&G Flooring, Inc., 2009 WL 1835949, slip op. (S.D.N.Y., June 23, 2009) (No. 08 CIV. 3735 (NRB)).

On October 27, 2008, while that action was being litigated, respondents here served petitioners with another Notice of Intention to Arbitrate, this time on the subject of unpaid contributions to the funds for employees performing work on projects other than the 1400 Broadway site for the later period of July 1, 2005 through June 30, 2008 under the same CBA. Pet. Mem. at 4; Petition, ¶20. On November 12, 2008, petitioner submitted a letter requesting a conference before this Court regarding a motion to stay the just-noticed arbitration. A copy of the letter was also sent to the Arbitrator. Affirmation of Joseph M. Labuda in Opposition to Respondents' Motion to Dismiss the Petition to Vacate the Arbitration Award ("Labuda Aff."), ¶5. This court responded by letter stating that, (1) because the arbitration at issue was not yet before the court, the court felt it lacked authorization to rule on the issue, and (2) that the arbitrator might be a more appropriate venue for resolution. Labuda Aff., ¶6.

On December 12, 2008, an arbitration hearing was held before Robert Herzog, Esquire. At the commencement of the

4

hearing, SGF made an application for the arbitrator to stay the proceeding based on its belief that the CBA was unenforceable and because of the litigation pending in the related matter before this court.  Petition, Exh. B at 3. The arbitrator denied that application and stated that he would proceeded to determine both the arbitrability and the merits of the dispute because he "had not been served with a Stay Order issued by a court of competent jurisdiction." Id. at 5.  He also stated that SGF "could argue its lack of arbitrability position as part of its case presentation to the   Arbitrator."     Id.     Instead   of   arguing   that arbitrability position, however, SGF refused to participate and  left  the  proceedings,  whereupon  the  hearing  went forward as a Default Hearing.  Id.

The arbitrator found that, based on the plain language of the CBA and its broadly-worded arbitration clause, "[a]s the Agreement provides for arbitration of disputes, the present case is arbitrable."  Id. at 7.  The arbitrator issued an award on January 5, 2009 in favor of respondents for $777,545.82.

Petitioners brought this action to vacate the award on March 25, 2009, alleging that the arbitrator "exceeded the scope  of  his  authority  since  the  contract  at  issue  was

entered into as a result of economic duress and fraud in the execution by Respondents."

## DISCUSSION

The Second Circuit has repeatedly emphasized the high degree of deference awarded to arbitrators in reviewing labor arbitration awards. See, e.g. Wackenhut Corp. v. Amalgamated Local, 126 F.3d 29, 31 (2d Cir. 1997). Such review is limited to two questions: "first, whether the arbitrator acted within the scope of his authority, and second, whether the award draws its essence from the agreement or is merely an example of the arbitrator's own brand of justice." Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Hollywood Heating & Cooling, Inc., 88 F.Supp.2d 246, 252 (2000)(internal quotation omitted), aff'd, Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Hollywood Heating & Cooling, Inc., 1 Fed.Appx. 30 (2d Cir. 2001). In such an analysis, a court may not overturn an award that is plausibly based in a valid contractual agreement between the parties. Petitioner does not contest that the award draws its essence from the agreement, but rather alleges that the contract itself is not enforceable.

6

The Supreme Court has made it clear that an "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Technologies Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986)(quoting United Steelworkers of Am. v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960)).[2] The Court has also made it clear that the question of whether a CBA creates a duty for the parties to arbitrate is a question for judicial determination. AT&T Technologies, 475 U.S. at 649.

Though this question is generally resolved prior to an arbitral hearing, here petitioners challenge arbitrability in a petition to vacate by alleging that the arbitrator acted outside the scope of his authority. Petitioners argue that the arbitrator had no authority to issue an award if SGF never intended to enter into the contract with respect to the projects other than 1400 Broadway.

"An arbitrator's scope of authority 'generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission.'" Hollywood

---

[2] See also Procter & Gamble Indep. Union of Port Ivory, N.Y. v. Procter & Gamble Mfg. Co, 312 F.2d 181, 184 (2d Cir. 1962)("The duty to arbitrate is wholly contractual and the courts have the obligation to determine whether there is a contract imposing such a duty. 'The Congress... has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate.'")(quoting United Steel-Workers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

Heating and Cooling, Inc., 88 F.Supp.2d at 252 (quoting Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)). Within this analysis, however, the role of the courts is "strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he had." Warrior and Gulf Navigation, 363 U.S. at 582.  If the parties did not intend to be bound by the agreement, the arbitrator would have acted without authority in issuing its decision.   Hollywood Heating and Cooling, Inc., 88 F.Supp.2d at 255.

In contending that the arbitrator exceeded the scope of his authority, petitioner raises claims of economic duress and fraud in the execution to argue that it did not intend to be bound by the agreement with respect to any projects outside the 1400 Broadway site.   Petition, ¶21. Respondent argues that these claims are barred because petitioner (1) did not raise them in a proceeding to stay arbitration before the court prior to the arbitration, and (2) then did raise them in a stay proceeding before the arbitrator prior to the hearing of the dispute at issue here.    In the alternative, respondent argues that petitioner has not sufficiently proven the elements of economic duress.  Further, respondent argues that even if a

claim for duress has been stated, the contract would only be voidable as a result, requiring petitioner to have repudiated the contract to now challenge it on these grounds. Respondent also argues that petitioner misapplied the defense of fraud in the execution and that petitioner's conduct has demonstrated the existence of a valid agreement.

We first examine whether the actions of petitioner during the period leading up to the arbitral hearing now preclude its arguments regarding the Arbitrator's actions. We find that they did not, and thus proceed to a determination of whether the Arbitrator exceeded his authority in this instance.

## A. Applicable Law and Standard of Review

### 1. Applicable Law

An action requiring the court to construe a provision of a CBA "arise[s] under" §301 of the Labor Management Relations Act (the "LMRA"). Vittoria Corp. v. N.Y. Hotel and Motel Trades Council, AFL-CIO, 30 F.Supp.2d 431, 434 (S.D.N.Y. 1998)(citing Lingle v. Norge Div. of Magic Chef, 486 U.S. 399 (1998). Further, this dispute is not governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., because the FAA does not apply "to contracts of

employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Indeed, §301 of the LMRA empowers the federal courts to fashion rules of federal common law[3] to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)(citing §301 L.M.R.A., 61 Stat. 156, 29 U.S.C. §185). However, while the substantive law to be applied is federal common law, Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 450-51 (1957), courts have looked to the Federal Arbitration Act[4] or to

---

[3] "Section 301 of the Taft-Hartley Act does not establish standards for the review of arbitration awards.... It is only because section 301 establishes a federal remedy for breaches of collective bargaining contracts, and because many such contracts... contain an arbitration clause, that the refusal to comply with an arbitrator's award becomes a breach of contract upon which a section 301 suit can be founded. But... the Supreme Court made clear that the courts in such cases must give the arbitrator his customary deference; the arbitrator's award is enforceable so long as it "draws its essence from the collective bargaining agreement," even if the court thinks the arbitrator misconstrued the contract." Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 184 (7th Cir. 1985) (citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); United Steelworkers v. Am. Mfg. Co., 363 U.S. at 568-69).
[4] See, e.g., United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n. 9 (1987) (finding that the FAA does not apply to labor arbitration cases but referencing Section 10(c) of the FAA in analyzing an arbitrator's refusal to consider certain evidence under the federal labor laws); Coca-Cola Bottling Company of N.Y., Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Bhd. of Teamsters, 242 F.3d 52, 54-55 (2d Cir. 2001)(finding that, though analysis under 301 is analytically distinct from the FAA, "the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone").

10

the law of the state[5] for guidance where necessary and appropriate.

Respondents urge that New York law should guide analysis of this dispute, while petitioners urge that the FAA should guide analysis in determining whether to vacate or confirm arbitration awards. We look to established common law governing the circumstances under which an arbitral award may be vacated. Beyond that, we look to New York law to guide analysis of the statute of limitations, as well for in the underlying law of contract formation. We also note that the language in the New York Civil Practice Law and Rules ("CPLR") and the FAA section regarding vacatur is nearly identical in sections regarding when the arbitrator acted in excess of authority.[6]

## 2. Standard of Review

---

[5] See, e.g., Local 802, Assoc. Musicians of Greater N.Y. v. The Parker Meridian Hotel, 145 F.3d 85, 88 (2d Cir. 1998) (using the three month statute of limitations period from CPLR 7511(a), rather than the FAA, where section 301 cases are silent on a limitations period, but borrowing "no more than necessary" to "close interstices in federal law"); Lerner v. Amalgamated Clothing and Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (finding state law, "if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy")(citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457 (1957)).

[6] See 9 U.S.C. §10(a) (allowing for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"); cf. N.Y. C.P.L.R. §7511(b)(1)(iii) (allowing for vacatur where "an arbitrator... exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made")

11

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, ---- U.S. ----, 129 S.Ct. 1937, 1951 (2009) (quotation omitted). Courts may consider exhibits to the complaint and documents incorporated into the complaint by reference, and "documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." Police and Fire Ret. Sys. of Detroit v. Safenet, Inc., 645 F.Supp.2d 210, 224 (S.D.N.Y. 2009) (citing In re Gildan Activewear, Inc. Sec. Litig., 636 F.Supp.2d 261, 268 n. 3 (S.D.N.Y. 2009)).

In Iqbal, the Court established a two-step approach for assessing the sufficiency of a complaint in the context

12

of a Rule 12(b)(6) motion.   Iqbal, 129 S.Ct. at 1951.
First, the court distinguishes between factual and
conclusory allegations and disregards anything conclusory,
for such statements are "not entitled to the assumption of
truth."   Id.   Second, the court "consider[s] the factual
allegations in [the complaint] to determine if they
plausibly suggest an entitlement to relief."   Id.   Further,
"[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice."   Id. at 1949.

**B.   Whether Petitioner, having challenged the arbitrability
of the dispute before the arbitrator, may now seek to
vacate the award under the theory that the arbitrator
exceeded his scope**

     As discussed above, arbitrability is a question for
the court to decide.   However, respondents argue that,
having sought a stay from the arbitrator on the basis of
the lack of enforceability of the contract, petitioner is
now estopped from raising the matter before this court in a
petition to vacate.[7]   Indeed, if petitioner participated in
the arbitrator's determination of the issue, any right to
seek de novo review of arbitrability would be waived and
instead the arbitrator's decision would be given the

---

[7] Respondents make their arguments in terms of the vacatur provisions of
the CPLR.  As discussed above, this matter is governed by federal
common law, and we will proceed under that understanding.

13

deference it normally receives in post-arbitration review. N.Y. Hotel and Motel Trades Council, AFL-CIO v. Hotel Nikko of N.Y., Inc., No. 91 Civ. 0795 (DNE), 1991 WL 168284 at *4 (S.D.N.Y. 1991).

Respondents fail to note, however, that if a party explicitly preserves their objection to jurisdiction before the arbitrator, it will be allowed to challenge jurisdiction in a petition to vacate. Id.; Nat'l Ass'n of Broadcast Employees & Technicians, AFL-CIO v. Am. Broadcasting Company, Inc., 140 F.3d 459 (2d Cir. 1998)("[w]e see no reason why arbitrability must be decided by a court before an arbitration award can be made... if [the party] does not seek to enjoin the arbitration, it can raise the arbitrability issue in a judicial confirmation proceeding")(citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)). A simple statement of reservation of rights is not enough, however, but rather a "forceful objection" is necessary to indicate an unwillingness to submit to arbitration. In the Matter of the Arbitration between Halcot Navigation Ltd. Partnership and Stolt-Nielsen Transp. Group, et al., 491 F.Supp.2d 413, 418 (S.D.N.Y. 2007)(citing to First Options, 514 U.S. 938).[8]

---

[8] Indeed at least one court has explicitly found that though allowing a party to participate under a reservation of objections "appears to be both unfair and wasteful," there is no question that arbitrability

14

Further, it appears under these cases that where a party has not actually participated in the argument regarding arbitrability and has explicitly objected to jurisdiction, they will be deemed to have reserved the right to object at a later court proceeding.⁹

It is undisputed that SGF sought a stay in advance of the arbitration hearing, contending that it had no obligation to participate in the proceeding because the arbitration provision is contained in a CBA to which SGF is not bound. Petition, Exh. B at 3. After the stay was denied by the arbitrator, instead of arguing their arbitrability position within the arbitral proceeding, SGF refused to participate and left the proceedings, whereupon the hearing went forward as a Default Hearing.

---

should be decided by the courts and "a rule allowing participation under a reservation may be implicit in the rule that a failure to move for a stay does not waive an objection to jurisdiction... since a motion for a stay would seem to be the only reasonable alternative to proceeding under a reservation." Stotter Division of Graduate Plastics Company, Inc. v. District 65, United Auto Workers, AFL-CIO, No 91 Civ. 7208 (LMM), 1992 WL 122761 (S.D.N.Y. 1992) (citing Avis Rent A Car System, Inc. v. Garage Employees Union, Local 272, 791 F.2d 22, 26 (2d Cir. 1986).

⁹ See e.g. Opals on Ice Lingerie v. Bodylines, Inc., No. 99 CV 3761 (ILG), 2002 WL 718850 (E.D.N.Y. 2002)(finding sufficient for preservation numerous letters indicating objection, refusal to brief the issue for the arbitrator, and moving for a stay before a court); cf. Halcot Navigation Ltd. Partnership, 491 F.Supp.2d at 419 (finding that though the party objected to jurisdiction, "simply stating a general reservation of rights with respect to arbitrability without in any way specifically objecting to the arbitrator's ruling on an issue submitted and briefed, does not preserve" the right to object); Freight Drivers, Helpers, Dockmen and Allied Workers Local No. 375 v. Kingsway Transports, Inc., No. CIV-90-593E, 1991 WL 64065 at *2 (W.D.N.Y. 1991)(finding whether the party expressly reserved its right to a judicial determination of arbitral jurisdiction was a disputed material fact warranting denial of summary judgment).

15

In proceeding to the merits of arbitrability without SGF, the Arbitrator quoted extensively from Am. Broadcasting Company, 140 F.3d at 462, including: "If [the party] does not seek to enjoin the arbitration, it can raise the arbitrability issue in a judical confirmation proceeding."[10]   Petition, Exh. B at 6.   Thus, after petitioner emphasized its belief that it was not subject to the arbitrator's jurisdiction and left when the stay was denied, the arbitrator clearly contemplated that SGF could and did sufficiently preserve its objection for review in the course of the confirmation process.   Accordingly, respondents' argument that allowing consideration of this dispute at this stage would allow petitioners "two bites at the apple" misses the mark in that SGF did not argue in the hearing, but rather preserved its objection to jurisdiction within the meaning of the case law.   We thus review the arbitrator's finding of arbitrability de novo.

---

[10] The arbitrator's quotation continued with: "... 'A party does not have to try to enjoin or stay an arbitration proceeding in order to preserve its objection to jurisdiction... A jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal waiver.' ... If arbitrability is rejected after the award, the party opposing arbitration will have obtained the relief sought. If arbitrability is upheld after the award, there is no reason for a court not to confirm the arbitrator's award." 140 F.3d 459, 462 (1998) (quoting Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1510 (3d Cir. 1994), aff'd, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

16

**C.   Whether the arbitrator exceeded the scope of his authority under the CBA, such that the award should be vacated**

As discussed above, if the contract is unenforceable, the arbitrator will have acted in excess of his authority in making the award.   In its Petition before this court, SGF seeks vacatur of the January 5, 2009 arbitral award "because the arbitrator exceeded the scope of his authority since the contract at issue was entered into as a result of economic duress and fraud in the execution by Respondents." Petition, ¶21.   When a contract was made under economic duress, it is voidable under New York law if a party acts promptly to repudiate the contract, otherwise they will be deemed to have ratified.   VKK Corp. v. Nat'l Football League, 244 F.3d 114, 122 (2d Cir. 2001)(quoting DiRose v. PK Mgmt. Corp., 691 F.2d 628, 633 (2d Cir. 1982), cert. denied, 461 U.S. 915 (1983)).   On the other hand, if a contracting party signed a contract as a result of fraud in the execution, the contract is void ab initio and can not be enforced.   Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 32 (2d Cir. 1997).

Petitioner contends that while SGF was performing a job at 1400 Broadway, the Union ordered all union workers to stop working because there were employees present at the

17

jobsite without a Union contract. Id. at ¶8. When the Union representative provided SGF with a CBA, he allegedly told SGF's President that it covered only the employees at the 1400 Broadway site. Id. at ¶10. It is undisputed that SGF executed the CBA without reading it or having an attorney review it, and that the actual terms of the signed contract included all SGF projects in the counties of New York, Orange, Putnam, Queens, Richmond, Rockland, Suffolk, Westchester, and Dutchess. Id. at ¶11,12. SGF contends that they signed the document because they "were fearful that the Union would illegally prematurely force [SGF] off of the project at 1400 Broadway, to which [SGF] had expended a substantial amount of money and which would provide substantial income to [SGF] upon completion." Id. at ¶11.

## 1. Economic Duress

Economic duress is present when: "(1) there is a threat, (2) which was unlawfully made, (3) which caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." KiSKA Constr. Corp.-USA v. G&G Steel, Inc., 2005 U.S. Dist. LEXIS 9821 at *15 (S.D.N.Y. May 20, 2005). Mere economic pressure, however, does not constitute duress. Legal Aid

18

Society v. City of New York, 114 F.Supp.2d 204, 225-226
(S.D.N.Y. 2000) (citing Scientific Holding Co. v. Plessey
Inc., 510 F.2d 15, 22 (2d Cir. 1974)).

A party claiming duress must act promptly to repudiate
the contract or release or he will be deemed to have waived
his right to do so. VKK Corp., 244 F.3d at 122.
Respondent contends that petitioner has ratified any
contract signed under duress by failing to rescind it in
the ensuing four years. Petitioner counters that it was
unaware that the contract applied to workers outside of
1400 Broadway until the first of the arbitrations was
brought, so its prompt action at that point was timely.
However, as the Second Circuit has stated:

"[S]hortly after the execution of a contract or
release, the rights and duties under it become
free of the doubt engendered by possible
assertions of duress... [T]he requirement of
prompt disavowal after execution is fair to the
disadvantaged party, who will ordinarily know at
the time he executes the instrument that he is
being economically coerced. He will therefore be
able to disclaim the instrument immediately if he
was forced into it by economic duress and wishes
to avoid its effect. VKK Corp., 244 F.3d at 123-
124.

If, as the petitioner contends, SGF's President signed the
CBA based on his fear of what might happen should he fail
to do so, SGF was clearly aware of any duress that may have
been in play during the negotiation. Petitioner has

19

offered no reason for the delay other than that SGF was unaware of the scope of the contract. Indeed rather than attempting to rescind the contract, SGF alleges it paid out contributions in accordance with the CBA as was consistent with its understanding of the agreement's terms. In addition, SGF has submitted to two audits of its accounts pursuant to the CBA at the request of the Funds since signing the agreement. Given SGF's actions subsequent to signing, SGF has waived the right to claim that the contract can not be enforced due to duress.

## 2. Fraud in the Execution

Petitioner also contends that the CBA is invalid because SGF entered into it as a result of fraud in the execution. Fraud in the execution will be found when "there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" Hetchkop, 116 F.3d at 31-32 (quoting Restatement (Second) of Contracts § 163 comment a (1981)). Any party claiming such a defense to contract formation must show "excusable ignorance of the contents of the writing signed." Id. at 32. "Proving excusable ignorance requires a showing that the party

20

satisfied its basic responsibility of reading what it signed." Bricklayers and Allied Craftworkers Local 2, Albany v. C.G. Yantch, Inc., 316 F.Supp.2d. 130, 147 (N.D.N.Y. 2003) (citing Hetchkop, 116 F.3d at 34).

The Second Circuit has found a fraud in the execution defense present where a contract previously reviewed was at the last minute "surreptitiously substituted" for another with different terms. Hetchkop, 116 F.3d at 32. However, in that case the court also explicitly stated that its decision did "not relax the basic responsibility of contracting parties to review a document before signing it," only allowing for consideration where a party's "diligence was thwarted by a quick and undetected switch of documents immediately after his review and prior to his putting pen to paper." Id. at 34; see also McCaddin v. Se. Marine Inc., 567 F.Supp.2d 373, 381 (E.D.N.Y. 2008)(finding no fraud in the execution where there was "no allegation, for example, that he reviewed one contract and then the defendants substituted a different document before he signed it [or] that his signature was forged"). Here there is no allegation that SGF reviewed one contract and unknowingly signed another. Indeed, SGF acknowledges that it never reviewed the agreement before signing. While petitioner alleges generally that there was no time to read

21

the document, there is no allegation that SGF's President was prevented from doing so at the time (other than his general desire to avoid a potential work stoppage) or from reading the contract in the weeks thereafter. Therefore petitioner has failed to adequately plead a fraud in the execution defense to contract formation.

Respondents further suggest in their Memorandum of Law in Support of the Motion to Dismiss that, if we grant the motion to dismiss, we sua sponte treat their motion as a motion to confirm the award. There is authority for doing so in this district based on the parallel natures of a petition to vacate and a petition to confirm an arbitral award.    See Sanluis Developments LLC v. CCP Sanluis LLC, 556 F.Supp.2d 329, 332 (S.D.N.Y. 2008)(collecting cases). As requested, we will treat respondents' motion to dismiss as a motion to confirm the award.

#### CONCLUSION

For the foregoing reasons, we grant respondents' motion to dismiss and treat the motion as one to confirm the award. Accordingly, the Petition is dismissed and the January 5, 2009 arbitral award is confirmed. The Clerk is directed to enter judgment for respondents in the amount of

22

$777,545.82 with interest at the rate of 5.25% beginning
January 5, 2009, the date of the award, and close the case.


**SO ORDERED.**


DATED:      New York, New York
            December 18, 2009

            NAOMI REICE BUCHWALD
            UNITED STATES DISTRICT JUDGE